Mr Justice Scott delivered the opinion of the Court. Earkman filed his bill for relief by injunction against a judgment at lav/, obtained by Bertrand, as endorsee against him upon a commercial note made payable by himself, at eight months, to a mercantile firm in New Orleans, of which he was a mem-her; which note was by that firm endorsed in blank, and placed in the hands of Dickinson, their agent, for a particular purpose, who, after its maturity, passed it to Bertrand in that city as his own, who afterwards filled up the blank endorsement to himself, and obtained the judgment in question. There can be no doubt of the general proposition of law in reference to commercial notes, that when it is shown in an action against the maker, by the holder, that it was without consideration, or that the consideration has failed wholly or in part, or that it was fraudulently put in circulation, that the holder, to protect himself against the equities of the maker, must show that he acquired the paper before it matured, and that he is a bona fide holder for a valuable consideration, or, to speak more technically, it must have been received in “ due course of trade,” for value. This proposition is so indisputably fixed, that it is unnecessary to re-sert to reasoning or to cite authority to sustain it. It may not be amiss, however, to remark that this rule is not founded on the maxim of the equity courts, that “that where the equities are equal, 1he law shall prevail,” although in many cases of its application, the doctrine of the maxim would be co-incident, because, in many other cases where the rule has just application, the spirit of that maxim will be outraged. Nor is the rule founded upon any notion that the assignment itself of the chose in action so changes the subject of the negotiation as to make it the evidence of a debt in the hands of an assignee, when in truth and in fact no debt existed; because no man can, by mere act of assignment, transfer a greater interest than he has, nor make that good and valid which is vicious and void. The assignment, whether by endorsement or delivery, but conveys the legal title and gives the right of action, and does not itself bar the equities, But the equities are cut off by the rule in question, which is an arbitrary rule of commercial policy, to facilitate trade and sustain commercial credit, because of the quality of such paper “ as a currency, and from the necessity of adopting such a principle for the convenience of trade and commerce with respect to such currency,” (per Spencer. Roane, Judge, in the case of Norton v. Rose, 2 Wash. R. 249.) In view of this rule, stated thus generally, it is manifest that Barkman, as maker of the note in question, cannot be barred of his equities against Bertrand as holder, under the facts as alleged and proved in this case, because it is not pretended that Bertrand acquired the paper before its maturity, to say nothing of the other indispensable ingredient of being at the same time a bona fide holder, for a valuable consideration, within the meaning of the rule. And in {Haler to constitute him such, he must not only have had no notice express or implied of Barkman’s equity, but he must also have given either money or property in exchange for the note, or have received it absolutely and unconditionally in payment of a pre-existing debt, and relinquished some' available security or some valuable right on the sole strength of the identical paper so innocently received in due course of trade. This we lay down to be the law, after having carefully examined all the numerous authorities throwing light on this subject that are cited in the briefs, except the case cited from 11 Conn. R. which we have not been enabled to obtain. But we find that the Alabama decisions not cited sustain what is represented by counsel of this Connecticut case. Some of these authorities, by courts of the highest respectability, fall short of this position, and hold that even the absolute extinguishment of a pre-existing debt, is not a holding for value within the rule, and that nothing is such beyond a present transfer of property or money in' exchange for the note, and that when such transfer is partial only and not to the full value of the note, then such holder is to be considered as a bona fide holder for value pro tanto. But this question, as to the extinguishment of a pre-existing debt, came up directly before the Supreme Court of the United States in the case of Swift v. Tyson, (16 Peter R. 1,) and it was held by the whole court as sufficient to satisfy the rule, and this is in accordance with what we think is the overwhelming current of dicisions. Judge Story, howe’ver, who delivered the opinion of the court in that case, went out of the record and asserted beyond this, that a negotiable noté or bill pledged as collateral security would stand on the same footing as one purchased in market for money, or taken in extin-guishment of a previous debt. Judge Catron, however, in that case dissented from all that was beyond the record, and subsequently Chancellor W al worth, in the case of Stalker v. McDonald et al., (6 Hill R. 93,) examined in detail all the authorities referred to by Judge Story to sustain his views, and shows very satisfactorily that they were, in a great degree, misconceived. When, however, the note is transferred only byway of indemnity against probable future loss, or from an existing liability, or of collateral security for a pre-existing debt, it is not such a bolding for value, as comes within the rule. Besides the New York authorities, this qualification of the rule in question is directly sustained by the cases of Cullam v. The Br. Bk. at Mobile, (4 Ala. R. 21,) and Andrews & Brothers v. McCay, (8 Ala. R. 920,) and is supported by other cases in that State, besides the support it receives from Pennsylvania, (Petrie v. Clark, 11 Serg. & R. 388,) Maine, (Holmes v. Smith, 4 Shep. R. 177,) Connecticut, (Brush v. Scribnor, 11 Conn. 388,) where we learn from the report of the case of Carlisle v. Wishant, 11 Ohio R. at page 176, that the Connecticut court say, “Negotiable notes, bills of exchange and bank notes, are all placed on the same footing and for the same reason.” But, above all, this qualification of the rule in question, is sus-' tained by the very reason of the rule itself, because as we have seen in the outset, the rule obtains because of the “quality” of such paper as a “currency.” So long, therefore, as such paper may be exchanged for money or for property, or may be used to extinguish a debt, or may evidence the surrender of an available security, or of some valuable right upon the sole strength of the transfer of such paper, it does the office of a currency; but when it merely serves as indemnity against future probable loss or an existing liability, or of collateral security for a pre-existing debt, it does not perform that office in the sense of currency representing value, and as such, the medium of the transfer of rights and the extinguishment of obligations, and the facilitator and expander of trade and commerce.. If, then, as a matter of fact in the case at bar, it be true that the note in question was not transferred to Bertrand in exchange for .money or property, or in payment absolutely and unconditionally of some pre-existing debt, or upon the relinquishment of some available security, or of some valuable right in the sole strength of the identical note, so immediately received by him in due course of trade, it will not be exempt in his hands under the rule in question from all the latent equities of Barkman as maker. On the contrary, it will be open to every defence he could make as such, if the note in question was still held and owned by the payees; because, in the language of Chief Justice Eyru, in the case of Collins v. Martin, (1 Bos. & Pull. R. 651,) “If it can be proved that the holder gave no value for the bill, then, indeed, he is in privity with the first holder, and will be affected by every thing which would affect the first holder.” But, although upon finding such fact in this case, the way will be opened to Barkman, as maker, to bring forward his equity, as we have already seen he could do upon the other ground, that is, because Bertrand did acquire the note before it matured— nevertheless it will be unnecessary for us to consider bis equity as maker, because it is insisted that, although he may be entitled to relief in that character, still, Bertrand can recover of him in 'his character of endorser, either as such technically, or because the legal effect of his endorsement under the circumstances, was a direct undertaking to Bertrand, In any view, however, we have to determine whether Bertrand is a holder for value within the rule in question as expounded; because, whether Barkman proceeds for relief as maker or endorser, it will be equally availing so long as Bertrand defends himself upon the doctrines of the law merchant as contradistin-guished from a mere equitable defence. And waiving in this inquiry all question, whether or not any one can be such holder within the rule, who holds the bare legal title to the bill or note for the use of another who has paid the value, and whether or not, under the circumstances, the party whose interest is sought to be set up in the name of the nominal holder, would stand only on the footing of an assignee, we shall proceed to determine this point in the case at bar without any reference to that question. Although, in general, commercial paper in the hands of the holder imports a consideration, and the law will prima facie presume that it is held for value, yet, where it is shown that the note or bill was put in circulation by fraud, it then rests upon the holder in such case to avoid the consequences of that proof by showing that the note or bill came to his hands for value paid for it before it was due. (Marslin v. Forward, 5 Ala. R. 349. Woodhull v. Holmes, 10 John R. 231. Wallace v. Br. Bk. at Mobile, 1 Ala. R. 569. Thompson v. Armstrong, 7 Ala. R. 256.) Bertrand introduced no witness on this point, and it has to be determined on the bill, answers and receipt executed by Bertrand to Dickinson, when he received the note in question, which receipt he admits as alleged in the bill. And we think it clear enough from this data, that he has^^led to make out this point in his case, and under the proofs it rested upon Mm to do. so. It is not pretended that any money or property was given in exchange for the note, or that any available security was delivered up, and so far from its having been shown clearly and distinctly that it was taken absolutely and unconditionally in payment of a pre-existing debt, or that some valuable right of his own, or of those in whose behalf he acted a's agent, was relinquished on the sole foundation of the transfer of the note, the express terms of the receipt present very strong grounds for an . inference at once probable and directly the contrary of both. That instrument is in the following words, to v/itr “ Rec’d of Townsend Dickinson, a note drawn by Barkman, payable to John G. Pratt & Co., and endorsed over to said Dickinson for $5,000, dated June 12, ’44; when collected the sum of $3,720 to be paid to Mrs. A. J. Clarke with interest, and after deducting the usual collecting fee, the balance I agree to pay over to the said Dickinson. Apl. 26, ’45. C. P. BERTRAND.” When all the circumstances of the transaction as shown by the evidence, are considered together — the origin of the indebtedness of Dickinson, its character in reference to its origin, its pursuit by Bertrand, the probable motives of the respective parties, the improbability that Dickinson would exact a discharge from responsibility, or that Bertrand would accord it upon the transfer of any paper in lieu of such a debt is, itself, not inconsiderable. There is no intimation of such a discharge upon the face of the receipt, or that any other paper was executed between the parties. Mrs. Clarke is to be paid $3,750 out of the proceeds of the note when collected, and she is also to have interest. Bertrand is to have the usual collecting fee, and then the balance is to be paid over by him to Dickinson. It is true, that by a strained construction, all this might be consistent with a contract for the extinguishment of the debt against Dickinson, but it does seem improbable that if such had been the stipulation of the contract of transfer, that the terms of the receipt would have been such as it is. Upon the hypothesis, ho¡w||yer, that the note was merely transferred as collateral security for the debt, the language of the receipt is natural, intelligible, and needs no interpretation. And so far from its being established that any valuable right was relinquished on the sole foundation of the transfer, it does not even appear that time was given to Dickinson. Nor does there seem to have been any effort on the part of Bertrand to take the deposition of Dickinson in his behalf, under any order of court. (2 Mad. 316.) If he had, in fact, thus paid the pre-existing debt, and been discharged from all responsibility on account of it, (see Bank of Mobile v. Hull, 6 Ala. R. 761.) where nothing short of an absolute and unconditional receipt of the note as payment, coupled with a relinquishment of the security paid off, was held sufficient; also 8 Ala. R. 972,) he could at least have proven this fact by Dickinson, although there might never have been any written discharge; and in a proper case the court' would doubtless have made an order allowing the deposition to be taken, subject to just exceptions. Upon the whole, the conclusion is almost irresistible to our minds, that the trensfer was only by way of collateral security, and consequently, not for value within the rule as we have expounded it. And therefore, we hold that, whether Barkman seeks relief as maker or endorser, technically, or in any other character in which he may be prima facie held liable on the note in question, the way is open to him to make any equitable de-fence that the nature of. his case will admit of on its intrinsic merits, against Bertrand, the holder without value. And we venture the remark, that a respectable authority cannot be found, whether decided under the rale of the law merchant in favor of the circulation of commercial paper as a currency, or under the rales of the equity courts, beyond the influence of the law merchant, where the fraudulent transfer of negotiable paper, or the fraudulent transfer of a chose in action, or of property, was ever held to divest the true owner of his title, or bar the maker or endorser of effectual relief, unless where the receiver was not only innocent, but was also affirmatively prejudiced by the faith and credit given by him to the paper, or to the apparent ownership of the chose in action or property. It is not the mere transfer of paper or property to an innocent person, ignorant of the fraud that divests the title of ownership or bars relief — if so, a mere gift, under the circumstances would suffice; but it is the sufficient consideration given therefor or the' legitimate prejudice received, that works this legal effect. And under the facts of this case, as shown in evidence, not only was no value given by Bertrand, or by those in whose behalf he acted, but it has not been shown that any of them have been prejudiced, even negatively, by reason of any reliance upon the transfer of the note in question. On the contrary, ány suggestion that payment might otherwise have been procured, or other security or indemnity obtained from Dickinson, is rebutted by proof that, at that time he was in fact notoriously insolvent, although his insolvency was unknown to Bertrand. Nor has this been repelled by any evidence introduced by Bertrand. And indeed it would not be easy to presume that Dickinson would have committed such a flagrant breach of faith, and thus demeaned himself so disreputably, if he had any other available means in reach. Nor can any equity grow up to Bertrand, or to those in behalf of whom he acted, upon the foundation that he believed the law was in his favor and could make the note available whether there were equities against it or not; and therefore, that he made no further effort to collect the debt from Dickinson, because, if he was mistaken as to this, it was his own fault, and the consequences ought not to be visited upon Barkman. If, then, this judgment is perpetually enjoined, the situation of Bertrand, and of those for whom he acted, is, in legal contemplation, exactly as it would have been had the note not been transferred by Dickinson; they having merely had the good fortune to get the note without any new consideration in paying value for it, or the renunciation of any valuable right, on the sole foundation of the transfer of the note. Under this state of facts, Bertrand can be in no way benefited by applying to the undoubted principles of the law of agency, which his counsel has discussed and illustrated by the cases cited with great ability. For, whether we take up the class of cases relating to the fraudulent transfer of mercantile paper, or of choses in action, or of property, the result is the same. If he is not a bona fide holder or possessor for value in the sense of the mercantile rule, he cannot hold, defend, or recover under the mercantile law, either at law or in equity. And if he turns to equity, and asks its administration in its broader basis and in its greater scope, irrespective of, and beyond the confines of ihe influence of the com-merciaMaw, the want on his part of a parting directly with value, or the relinquishment of a valuable right as equivalent, still sticks to him as the poison shirt of Nessus, and he has no case for the Chancellor’s favor. It is, therefore, in vain that he may assimilate his case, as a case of confidence reposed, to that of a case where one trusts another with his blank endorsement to fill up for a particular amount, (which, in the language of Lord Mansfield, in the case of Russell v. Sangstoff, “is a letter of credit for an indefinite sum,”) and that individual abuses the confidence thus reposed in him, and fills it up for a larger amount, and puts it into circulation even for a different purpose. For, in such a case, if it was commercial paper, and in the hands of a bona fide innocent holder, for value in the technical sense of the term, it may be recovered; if not for such value, it could not be. And so, if it was not commercial paper, it could be recovered on purely equitable grounds, either •pro tanto, or wholly, according as the innocent holder parted with partial or full value, either in money, property, in the extinguishment of a pre-existing debt, or in the renunciation of some valuable right, upon the sole foundation of the transfer. And this, not only upon the principles of commercial policy, which, in such cases, is co-incident with equity, but upon the obvious principles of equity, that if by misplaced confidence one enables another to commit a fraud, it is but just that he pay the penalty of his own indiscretion, and that the loss should not be visited upon another who has vested his money or parted with his property or relinquished his valuable right on the faith of the genuineness of the signature, without any means of ascertaining the fraud. (8 Porter 297. 1 Ala. R. 18. 3 Ala. 188. 5 Ala. R. 370. 11 New H. R. 66. 1 Hill R. 513.) But in the case at bar, no money was- paid or property given in exchange, nor debt extinguished, nor valuable right relinquished on the sole foundation of the transfer of the note in, question. And, as before remarked, the same will be the result of tho-analogies to cases of the fraudulent transfer of property under' peculiar circumstances of confidence reposed, accompanied by indicias of ownership. In every view, then, in which we .have considered this case, and we have looked at it in all the various aspects in which it has been so ably presented by counsel, as well as examined the numerous authorities cited, we feel clear that the decree of the court below, in perpetuating the injunction, is correct. Affirmed.